```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :   05 CIV. 227 (DLC)
COLLEEN ANN WAINWRIGHT and ELIZABETH       :
WAINWRIGHT,                                :   OPINION AND ORDER
                    Plaintiffs,            :
                                          :
          -v-                             :
                                          :
MATRIX ASSET ADVISORS, INC.,              :
                                          :
                    Defendant.             :
                                          :
-----------------------------------------X
```

Appearances

For Plaintiffs:
Howard R. Reiss
Matthew Sheppe
Reiss, Eisenpress & Eisenberg
425 Madison Avenue
New York, New York 10017

For Defendant:
Bruce A. Langer
845 Third Avenue, 16th Floor
New York, New York 10022

DENISE COTE, District Judge:

    Plaintiffs were the intended beneficiaries of their father's Individual Retirement Account ("IRA"). They contend that their father's financial advisor failed to ensure that all of the paperwork that was necessary to effect their father's intention was completed. This Opinion considers a motion to dismiss the plaintiffs' negligence and breach of contract claims. For the reasons stated below, the motion is granted in part.

Background

All facts cited are taken from the Complaint. In December 1999, Charles Wainwright ("Wainwright") asked defendant Matrix Asset Advisors, Inc. ("Matrix") to roll over his employment retirement plan into an IRA. Wainwright directed that his daughters, plaintiffs Colleen Ann Wainwright and Elizabeth Wainwright (the "Wainwright Daughters"), be made beneficiaries of the IRA. Before the end of that year, Matrix faxed Wainwright certain forms and indicated where he should sign them and fill in his beneficiaries. Wainwright signed the forms, listed his daughters as beneficiaries, and faxed the paperwork back to Matrix, which forwarded them to Charles Schwab & Co. ("Schwab"), custodian of Wainwright's retirement plan.

The plaintiffs allege that Matrix failed to inform their father that the Wainwright Daughters could not be made beneficiaries of the rollover IRA without a waiver from Wainwright's wife, stepmother of the two daughters. Matrix also checked the wrong box on the forms it prepared for Wainwright's signature, checking "Rollover IRA" instead of "Rollover from Employment Retirement Plan." Plaintiffs allege that, had the correct box been checked, it would have been apparent to Schwab that a waiver from Wainwright's spouse was necessary. They also allege that Wainwright's wife would have signed the waiver if it had been presented to her by Wainwright.

Wainwright died in October 2003. After his death, Matrix and Schwab took the necessary measures to assure that the

Rollover IRA funds were turned over to the Wainwright Daughters. Just before the funds were to be placed in accounts that Schwab had created for the daughters, it was discovered that no waiver from the wife had ever been executed. Schwab accordingly paid the IRA funds to the wife, and the Wainwright Daughters were left with no inheritance, as Wainwright's will had made no provision for them.

The Wainwright Daughters filed a complaint against Matrix on January 11, 2005. The complaint asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs allege that Matrix acted negligently as a financial advisor. They also state a breach of contract claim based on Matrix's agreement to assist Wainwright in creating a rollover IRA with the Wainwright Daughters as beneficiaries. Damages are estimated to be approximately $500,000.

Defendant moves to dismiss the action on several grounds. It argues that plaintiffs do not have standing to bring their negligence claim, and that they do not qualify as third-party beneficiaries such that they can bring a contract claim. It also argues that the statute of limitations has run on plaintiffs' claims.[1] The parties are in agreement that New York law governs

---

[1] In its original memorandum of law, defendant also argued that plaintiffs' claims were barred by the probate exception to diversity jurisdiction, that plaintiffs did not have standing to bring an action on behalf of Wainwright's estate, and that plaintiffs cannot sue as expectant heirs or for damages in their right to inherit property. It also raised a statute of limitations argument based on N.Y C.P.L.R. 210(a), which states that a surviving action must be commenced by a decedent's representative within one year of the decedent's death.

the case.

Discussion

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P. Pleadings are to give fair notice of a claim and the grounds upon which it rests in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). Because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, "extensive pleading of facts is not required." Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) (citation omitted). If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. Swierkiewicz, 534 U.S. at 514. In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

---

Defendant does not persist in these arguments in its reply memorandum, and they would not in any event be accepted here, as plaintiffs do not claim against Wainwright's estate, on behalf of the estate, or in their capacity as heirs to the estate.
    In their opposition, plaintiffs object to the defendant's submission of various documents as exhibits to its motion to dismiss. None of the documents were integral to the arguments that defendant carried through to its reply brief, and none were considered in ruling on this motion.

4

1.  Plaintiffs' Standing to Bring a Negligence Claim

Defendant argues that it owed no duty of care to plaintiffs sufficient to support a cause of action for negligence, as professionals[2] are not liable for malpractice in rendering professional services to third parties not in privity or near-privity with them.  To succeed on a negligence claim, a plaintiff must establish "(1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach."  Di Benedetto v. Pan Am World Service, Inc., 359 F.3d 627, 630 (2d Cir. 2004).  Further, "[u]nder New

---

[2] Plaintiffs and defendant appear to be in agreement that a financial advisor -- at least, the kind of financial advisor that is the defendant in this case -- is a professional for purposes of New York tort law.  Although defendant's professional status has little salience here, it is relevant to the statute of limitations discussion, infra Part 3.  Plaintiffs cite two federal district court cases that have ruled in the context of a motion to dismiss that investment advisors were professionals and therefore potentially subject to the continuous representation doctrine, which can toll the statute of limitations.  See Podgoretz v. Shearson Lehman Bros., Inc., Nos. 86CV2861 (SJ), 86CV2996 (SJ), 1994 WL 1877200, at *5-6 (E.D.N.Y. Mar. 23, 1994) (magistrate's report and recommendation); Dymm v. Cahill et al., 730 F. Supp. 1245, 1263-64 (S.D.N.Y. 1990).  In a recent case, however, the New York Court of Appeals expressly left open the question whether financial advisors qualify as professionals, as do physicians, lawyers, engineers, architects, and members of certain other highly trained and self-regulated professions.  See EBC I, Inc., v. Goldman Sachs & Co., No. 61, 2005 WL 1346859, at *8 (N.Y. Ct. App. June 7, 2005); Chase Scientific Research, Inc. v. NIA Group, Inc., 96 N.Y.2d 20, 29 (2001) (characterizing a profession as one that involves "extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards," in addition to client relationships that involve "trust and confidence").  Because the issue is not disputed in this motion practice, this Opinion will not further explore the question.

York law, professional malpractice is a species of negligence. As such, its general elements are (1) negligence, (2) which is the proximate cause of (3) damages." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 15 (2d Cir. 2000) (citation omitted).

A client to whom services are rendered has standing to sue a professional for negligence in performance of his duties. Any other person who asserts a negligence claim premised on a breach of a duty arising from a contractual relationship must be in privity to recover. New York courts have held firm to the traditional rule of strict privity in a context nearly identical to this one: an intended beneficiary cannot recover for an attorney's malpractice in drafting a will or planning an estate. See, e.g., Rovello v. Klein, 757 N.Y.S.2d 496 (2d Dep't 2003); Deeb v. Johnson, 566 N.Y.S.2d 688 (3d Dep't 1991); see also Lucia Ann Silecchia, New York Attorney Malpractice Liability to Non-Clients: Toward a Rule of Reason and Predictability, 15 Pace L. Rev. 391, 422-23 (1995) ("[New York] courts have . . . been adamant in refusing to find disappointed will beneficiaries to have a cause of action against the attorney who negligently drafted or executed the will under which they would have received an inheritance. . . . [T]he courts have clung to the traditional rule."); cf. Pope v. Rice, No. 04 Civ. 4171 (DLC), 2005 WL 613085, at *10 (S.D.N.Y. Mar. 14, 2005) (noting that, as a general rule in New York, a lawyer has "no duty of care to third

parties" (citation omitted)).³  There is no principled basis for applying a different rule to a financial advisor's preparation of a beneficiary designation.

It is true that this rule creates a Catch-22, in which no person has standing to recover for professional malpractice in a context in which malpractice will often not be discovered until the client is deceased, and any recovery by the decedent's estate will necessarily be limited by the fact that the estate itself will seldom be harmed -- the only cognizable injury, save fees paid to the professional who committed the malpractice, is generally to the beneficiary.  For these reasons, the vast majority of states do in fact allow a wronged beneficiary to sue. See Devlin v. United States, 352 F.3d 525, 540 (2d Cir. 2003) (noting that, nationwide, there is a "widespread recognition . . . of a lawyer's liability to an intended heir"); Barcelo v. Elliott, 923 S.W.2d 575, 579 nn.1-2 (Tex. 1996) (Cornyn, J., dissenting) (collecting authority and counting New York among only a handful of states that still apply the strict privity rule to lawsuits by wronged beneficiaries).  Nevertheless, New York law is clear on this point.

Plaintiffs rely on a line of cases arising from Ultramares Corp. v. Touche, 255 N.Y. 170 (1931), in which New York courts have recognized that a plaintiff in a relationship approaching that of privity may assert a negligent representation claim

---

³A duty of care to third parties may arise in cases involving fraud or malicious acts, however.  See Pope, 2005 WL 613085, at *11.  No such intentional misconduct is alleged here.

7

against a professional with whom the plaintiff had no contractual relationship. See Secs. Investor Protection Corp. v. BDO, 222 F.3d 63, 73-74 (2d Cir. 2000) (discussing Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536 (1985)); Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 383 (1992); White v. Guarente, 43 N.Y.2d 356, 361 (1977). Such cases have held that a plaintiff may recover on a near-privity theory if three criteria are met:

> (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance.

Prudential, 80 N.Y.2d at 321-22; see also Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 216 (2d Cir. 2002). Nowhere in the complaint do plaintiffs allege their reliance on a statement made by the defendant. Plaintiffs' negligence claim is accordingly dismissed.

2. Plaintiffs' Third-Party Beneficiary Status

Alternatively, plaintiffs assert a contract claim on the theory that they may recover as third-party beneficiaries.[4]

---

[4] Defendant notes that plaintiffs did not specify in the complaint that they were bringing the action as third-party beneficiaries. This fact does not warrant dismissal of the cause of action. See Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 600 (2d Cir. 1991) ("[Defendant] attempts to counter this argument by pointing out that [plaintiff] failed to plead the third party beneficiary theory in his complaint. To this, we simply respond that federal pleading is by statement of claim, not by legal theory.").

8

Under New York law, to succeed on a breach of contract claim as a third-party beneficiary, a plaintiff "must establish the existence of a valid and binding contract between other parties; that the contract was intended for plaintiff's benefit; and [that] the benefit was immediate, and not incidental, so as to 'indicate duty to compensate the plaintiff if the benefit is lost.'" Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 589-90 (2d Cir. 2005) (quoting Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 464 (1983)).

Plaintiffs have alleged a valid contract. A plaintiff can recover against a professional on a contract theory. Where there is a retainer agreement, recovery may only occur where "the [professional] makes an express promise in the agreement to obtain a specific result and fails to do so." Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002) (citation omitted); see also Robins v. Finestone, 308 N.Y. 543, 546 (1955); Kaplan v. Sachs, 639 N.Y.S.2d 69, 70 (2d Dep't 1996). Here, plaintiffs point to a specific agreement to effectuate the rollover of Wainwright's retirement account, to create an IRA, and to designate the Wainwright Daughters as beneficiaries, although the precise terms of the contract are unclear.[5] The

---

[5] The terms of the relationship, for example, are unknown at this stage and may have an impact on whether plaintiffs can recover on a contract theory for the alleged omission. If the plaintiffs cannot show that the defendant was being compensated for insuring that the choice of beneficiary was properly effected, then the performance of this service may have been external to the contractual relationship. If that were the case, only a malpractice action would lie. See Chase Scientific Research, 96 N.Y.2d at 25 (noting that a breach of contract claim

9

plaintiff properly notes that such a contract, for performance of services within one year of the agreement, is not subject to the statute of frauds. See N.Y. Gen. Oblig. Law § 5-701(a)(1). That no writing is alleged is therefore not fatal to plaintiffs' claim.

New York has adopted the doctrine of third-party beneficiary status as set forth in the Restatement (Second) of Contracts, which requires a third-party beneficiary to be an intended, rather than an incidental, beneficiary to recover for breach. See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y. 38, 44 (1985). "Essential to status as an intended beneficiary under . . . [the Restatement] is either that 'performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary' or that 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" Id. (quoting Restatement (Second) of Contracts § 302(2)). The plaintiffs in this action qualify as third-party beneficiaries, as the agreement between Wainwright and Matrix that paperwork be prepared naming plaintiffs as IRA beneficiaries evidenced the parties' intent to benefit them.

That Wainwright possessed the right to change their plaintiffs' third-party beneficiary status is of no consequence if he did not exercise that right. See Levin v. Tiber Holding

---

may be brought against a professional where the contract at issue involved "a particular bargained-for result" (emphasis supplied)). The parties are invited to brief this issue at the summary judgment stage, if appropriate.

10

Corp., 277 F.3d 243, 249 (2d Cir. 2003) ("It is inconsequential that [the promisee] retained a right of rescission, because [its] right of rescission was never exercised."). In arguing that the revocability of the designation undermines plaintiffs' status as third-party beneficiaries, defendant cites McCarthy v. Pieret, 281 N.Y. 407, 410 (1939), a case in which a provision in a mortgage clause directing that payments be made to the mortgagee's heirs upon her death was rejected as being testamentary in nature and therefore in violation of the probate laws. These facts bear little relation to the case at hand. Moreover, the New York Court of Appeals has expressly limited McCarthy to its facts. In the Matter of the Estate of Hillowitz, 22 N.Y.2d 107, 110 (1968) (holding that third-party beneficiary contract in which a partner's spouse was to receive his interest in the partnership upon his death was valid). Defendant's motion to dismiss the contract claim is accordingly denied.

It should be noted, however, that there may be significant limitations on the damages that plaintiffs can collect on a contract theory. The lost IRA proceeds may qualify as consequential damages, because the contract at issue merely involved payment in return for services rendered. Under New York law,

> the availability of consequential damages in a given case requires an examination of: (1) the particular contract at issue; (2) whether there has been any conscious assumption of liability by a contracting party; and (3) whether, by words or deeds, one party was reasonably led to believe that the other had assumed such liability.

11

Lava Trading Inc. v. Hartford Fire Ins. Co., 365 F. Supp. 2d 434, 445 (S.D.N.Y. 2005) (relying on Kenford Co. v. County of Erie, 73 N.Y.2d 312, 319 (1989)). If the evidence is insufficient to establish that these criteria were met, plaintiffs would only be entitled to direct damages -- most likely, return of fees paid for relevant services rendered to Wainwright by the defendant.[6]

3. Statute of Limitations

N.Y. C.P.L.R. 214(6) imposes a three-year statute of limitations for "an action to recover damages for malpractice, other than medical, dental, or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort." The legislative history of C.P.L.R. 214(6) indicates that

> where the underlying complaint is one which essentially claims that there was a failure to utilize reasonable care or where acts of omission or negligence are alleged or claimed, the statute of limitations shall be three years . . . regardless of whether the theory is based in tort or in a breach of contract.

In the Matter of the Arbitration Between Kliment & Halsband & McKinsey & Co., 3 N.Y.3d 538, 541-42 (2004) (quoting Revised Assembly Mem. in Support, Bill Jacket, L. 1997, Ch. 623); see also Chase Scientific Research, 96 N.Y.2d at 25 (noting that, for purposes of C.P.L.R. 214(6), a malpractice action "can

---

[6] Between the damages limitations in contract actions and the requirement that there have been a contract to achieve a specific result rather than a general retainer agreement, it is unlikely that breach of contract actions against estate planning professionals will make many wronged beneficiaries whole. The New York rule of strict privity, see supra Part 1, is thus not much softened by the availability of this alternative theory of liability.

theoretically also rest on breach of contract to obtain a particular bargained-for result" (citation omitted)).  As noted above, see supra note 2, both plaintiffs and defendant concede in their memoranda of law that financial advisors are professionals for purposes of the statute.[7]  Accordingly, even though plaintiff's surviving claim is for breach of contract, C.P.L.R. 214(6) imposes the applicable statute of limitations.

A cause of action normally accrues "at the date of the malpractice complained of."  Glamm v. Allen, 57 N.Y.2d 87, 92 (1982).  The plaintiffs argue, however, that the facts of their case warrant application of the continuous representation doctrine to toll the statute of limitations.  "The continuous representation doctrine . . . 'recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.'"  Shumsky v. Eisenstein, 96 N.Y.2d 164, 167 (2001) (quoting Greene v. Greene, 56 N.Y.2d 86, 94 (1982)).  "New York Courts have repeatedly held that the doctrine is strictly limited to instances where the continuing representation pertains specifically to the matter in

---

[7]Because only the contract claim survives, the issue of whether or not financial advisors are professionals is not dispositive in the context of this motion.  If financial advisors are professionals, the three-year statute of limitations applies, but may be tolled by the continuous representation doctrine, as plaintiff alleges.  If they are not professionals, the customary six-year statute of limitations applies to the contract claim. See N.Y. C.P.L.R. 213.

13

dispute, and is not applicable where an attorney provides ongoing general representation." Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 889 (S.D.N.Y. 1997) (collecting cases). The plaintiff must "affirmatively demonstrate ongoing representation in connection with the specific matter from which the malpractice claim arose." Id. (citing Zaref v. Berk & Michaels, P.C., 595 N.Y.S.2d 772, 774 (1st Dep't 1994).

In this case, whether defendant continuously represented Wainwright is a question of fact that cannot be resolved in a motion to dismiss. Plaintiffs allege that Matrix took steps "to arrange to turn over . . . the proceeds of the rollover IRA to [the Wainwright Daughters]" after Wainwright's death, a fact which might suggest that there was ongoing management of Wainwright's retirement accounts, including oversight of transfers to beneficiaries.[8] Defendant's motion to dismiss on statute of limitations grounds is therefore denied.

---

[8]The fact that plaintiffs may only recover under a contract theory, not a negligence theory, does not mean that the continuous representation exception to the three-year statute of limitations is not applicable. In Greene, for example, a plaintiff was allowed to bring a cause of action for rescission of a trust agreement after the governing statute of limitations ordinarily would have expired, because the defendants in the case had continued to act as plaintiff's attorneys in all matters relating to the trust for years thereafter. Greene, 56 N.Y.2d at 94. The Court of Appeals rejected defendants' argument that creation and management of a trust were discrete acts. Id.

14

Conclusion

Defendant's motion to dismiss plaintiffs' professional negligence claim is granted. Its motion to dismiss the contract claim is denied.

SO ORDERED:

Dated:   New York, New York
         July 27, 2005

```
                                    _____
                                            DENISE COTE
                                    United States District Judge
```